Good morning, Your Honors. May it please the Court. The key questions on appeal in this matter first relate to when a stint is a stint within the meaning of the first limitation of the asserted method claims. And second, when properly construed, whether MEDTRONIC's manufacturing process meets those limitations. We submit that the District Court made errors in both construing the claims and in considering the evidence of whether MEDTRONIC actually makes a stint. With respect to the first question, District Court found that the two specific or relevant steps, the first one being selecting a stint and the second one being affixing a covering to that stint, needed to be absolutely done in the order and the first step needed to be completed before the second step was begun. We submit that that was an error and the District Court committed that error by reading into the claim a limitation that required the complete formation of the stint before the covering was affixed to the stint. In addition, the District Court committed error by reading in a limitation of a rigid structure that is not a limitation that either party advocated for at the Markman hearing and further, even at trial, the District Court offered no construction of what a structure should be. It's not until the post-trial decision in which the District Court defined a structure to be that which must be a single device. The District Court did so based on the testimony without any citation to the record, the evidence, or otherwise. The claim does say that you affix the covering to the exterior surface of the stint. There's some internal adjectives I've deleted, but it says you affix the covering to the stint. Doesn't that suggest the stint does have to be formed before you affix the covering? It suggests that the stint could be formed. We would submit that in the language of the Baldwin case, that there's no intrinsic evidence that it unequivocally precludes an alternate reading. Your witness agreed, your expert witness agreed, that to have a stint, you had to have a double spring and at least one of the single springs, right? Yes, Dr. Berry agreed that looking at the accused process as the way the District Court construed stint, that you had to have that first single spring come in. The way Medtronic's process worked... If that's the case, then the affixing of the covering has to be after you have the stint, right? That's absolutely correct, your honor. In this instance, what the District Court construed as affixing were what are called locking stitches. Effectively, the covering is stitched just a few times at either end of the double spring to make sure that it stays in place during the manufacturing process, but that can't be the affixing in the claim because you have no stint. It is only when the first single spring comes in and you have a stint that has a multiplicity of openings, which is required by that first element, that subsequent stitching becomes the affixing as claimed in these claims. That is the position that Gore's expert, Dr. Berry, took. In effect, it's not one with which we would submit Dr. Loomis disagreed. Dr. Loomis, Medtronic's expert, simply believed that the stint was the double spring and when the locking stitches were put in, that constituted affixing. The District Court agreed with him and that was error. So what your contention is that any part of the affixing step constitutes affixing within the meaning of the claim, right? I'm sorry, sir. Any part of the affixing, any sewing, any sewing, even though most of the sewing takes place before there's a stint, any sewing that takes place afterwards could constitute affixing within the meaning of the claim? Any sewing that occurs after the stint has been formed would indeed satisfy the limitation of affixing. Why would that be true? Well, why would it be true? It would be true... Why would it be true that that's the right claim construction? Well, because in order to have the affixing as the claim requires, it has to be affixing to the stint, as I believe Chief Judge Rader just articulated. And so, any sewing, for example, that takes place before the stint is formed, may be some form of attachment or affixing, but it's not affixing within the claim language. Why? Because in order to have affixing, you have to first have the stint. And this is under the court... It's kind of circular. Well, it is in some respects, Your Honor, but that is another reason why the district court's construction, we believe, was incorrect. What the claim talks about is simply selecting the stint. The district court read in the requirement of the formation. In addition, as I mentioned earlier, the district court required that the structure be single device. This was a JA-114 in the record, and there's no evidence in the intrinsic record whatsoever to support that construction. The district court reached its conclusion without fully and fairly considering the full scope, and in fact, relied, as it said, on the logic and grammar of the claims. But in doing so, what the district court did effectively was to look at antecedent basis and just antecedent basis. It marched through the claims, and it looked at the references in the second step affixing to the word the stint formed in the first. But as this court's precedents made clear, interactive gift express, as well as the court's Baldwin and Altiris opinions, and finally, the Respironics case, that in and of itself is not sufficient. In each of those cases, this court found that a later step, referring back to an earlier step, could be performed out of order, and that was sufficient. If I could now turn to the district court's findings with respect to 271G and damages. The district court in this case made a finding that there was no control or direction by the named parties sufficient to cover damages for any of the importation that occurred prior to 2008 when the talent devices were approved for use in the United States. Just to frame this issue before I address that specific point to make it clear to the court, what's at issue here on appeal are actually any sales that took place after January of 2009 outside the United States. Medtronic began selling these devices in 2008 in the United States, and there's no dispute that those devices that were sold and offered for sale in the United States... I found this confusing. The sales are to users outside of the United States. What is the connection, the asserted connection with the United States, the fact that the sales agent, the accounting, the paperwork is done by the United States company? Well, there are two, if I can just take a moment. All of the manufacturing took place at Medtronic Mexico, and until 2009, all of those devices were imported into the United States and were loaded onto catheters or delivery systems in Santa Rosa, California. Some of them were exported outside of the United States. But none made, used, or sold, or those that were exported were not made, used, or sold in the United States, unless you say it's because the parent company was accounting for the sales. Yes, the parent company was accounting for the sales, but we would argue that under 271G, those devices were used in the United States, insofar as the stint grass themselves that were manufactured at Medtronic Mexico weren't considered even completely... Because they were attached to the catheter in the United States? Is that the use? That's correct, Your Honor. That's the beneficial use, as that term is used under NTP. And even Medtronic agrees with that, insofar as that the record in the PMA submission that was made to the FDA at JA2369, Medtronic identifies the stint grass component that was manufactured in Mexico as simply a component, and that it is not until the device is loaded onto a delivery system that it is a completed medical device, and one that can be used by physicians for its intended purpose. So in that sense, there was a use under 271G. In addition, for all of the sales that occurred in the United States, those clearly are sales and offers for sale under 271G, and so the issue on what the district court found only relates to those sales that took place outside of the United States after January, approximately January of 2009. And on that issue, we would admit that the district court committed error, because there was clearly evidence that the named parties, Medtronic Inc. and Medtronic Vascular, were controlling and directing the entire process. Now you didn't make any, Gordon didn't make any arguments that there was a vicarious control here, right? And that's why the district court spent a lot of time really delving into the record and seeing who shipped this. The district court did spend significant time. We did not articulate a specific vicarious liability theory leading up to trial. We did raise the issue at trial or during trial. We asked to brief it post-trial. But he said very clearly that it was not any argument that you made, and therefore he had to determine who shipped the materials, and on that he made a pretty clear finding, didn't he? He did make a finding on who shipped the materials, but he also concluded that there was a preponderance of the evidence that the named parties were controlling and directing the manufacturing. There was no dispute that the named parties, and specifically Medtronic Vascular, controlled and directed both the design and the development and the marketing and the sales, and so the only issue here on which the district court parted ways with Gore's view was on whether there was sufficient evidence to demonstrate control and direction of the actual importation activity. And he said it would be a mere assumption that Medtronic directed the shipping. He did say it was a mere assumption, and we contend that that was an erroneous conclusion based on the totality of the evidence. What the district court said was that if he had a contract in front of him, he might draw a different conclusion. He didn't have a contract in front of him, and so therefore, despite the totality of that evidence, he determined that there was no sufficient evidence under a preponderance of the evidence standard that the named parties satisfied the statute. We contend that that was clearly erroneous. Would you like to save your rebuttal time? I would, Your Honor. Thank you. Thank you, Mr. Davis. Mr. Alacqua. Good morning, Your Honors. May it please the Court. The district court below actually found that the accused processes for making these Sten graphs did not infringe any of the asserted claims on three independent grounds. The first of those independent grounds was the order of the steps. The second was the fact that there was a single device. The court construed Sten to also include the limitation that it was a single device and that there was not a single device in the process that later had a cover affixed to it. And finally, the third independent case dispositive ruling on non-infringement involved rigidity because the court also found that there was a claim construction for Sten that included that it was substantially cylindrical and rigid structure. Any one of those three are case dispositive here. I'd like to first discuss the order of the steps. Regarding the order of the steps, the first place that we always start is with the claim. And that's what the judge did here. Judge Davis looked at the claims and he looked at whether there was a logic and grammar that he had to consider, and he did. And I believe that, Judge Rader, you've already picked up on that, that there was a clear antecedent basis because not only did it refer to Step A, but it referred specifically to the tubular diametrically adjustable Sten. In all four examples, they also show that there is an ordering of the steps. There's four examples in this specification. Each one of them calls for either making a Sten and then covering it or choosing or selecting a pre-made Sten and then covering it.  And in the prosecution history, in response to the Patent Office, Gore told the Patent Office that for all of the examples, the Sten is in its enlarged state before it is covered. So the Sten has to be fully formed and has to fully exist before it can be covered. So the accused method here of making a Sten graft is actually fundamentally very different than the claim method that we just discussed. In the accused method, we have a tube of fabric, and within that tube of fabric, we actually insert metal pieces, which are called springs. The first of those is a double spring, two circular springs connected with a connecting bar. That spring is then sutured to the fabric. It is not disputed that any of these springs have the Stent Claim Limitations that are recited in the claim itself. Because you recall in the claim itself, it says it must have an exterior surface, a luminal surface. It must have a wall with a multiplicity of openings. Those are all limitations on Stent that are recited in the claim itself. Those are limitations that are beyond what the court construed Stent to be, which part of it was that it was substantially rigid. Part of it was that it was a single device. The district court found that this method never had a Stent that had all of the claim limitations and then a cover affixed to that Stent. That was a clear fact finding below. The district court did not rely on the rigid factor, the construction under substantially rigid for that finding. It only relied on the Stent Claim Limitations as recited in the claim itself. So if affirmed on this point, on order of steps, then that is case dispositive for this appeal. The district court also, according to Gore, has placed a formation step in the middle of Step A and Step B. That's incorrect. The formation step was already in these claims because the district court construed another term in the claim at the request of the parties, and that term was selecting. In the selecting step, the district court stated that it simply represents a choice to make a Stent with the necessary characteristics, those characteristics are the ones that I just listed, or the choice to already form a Stent with particular characteristics, again those same characteristics including multiplicity of openings in the wall. So in selecting construction, which has not been appealed here, with either choice, the Stent either being fully formed because it was being made or fully formed because it was a pre-made Stent, the formation was already part of the claim. And it's already law of the case because it is not appealed. So as far as formation... Where is there support for rigid as a requirement of the claims? With respect to rigid, Your Honor, in the specification, each of the examples depicts a Stent, either made or a pre-made Stent. In Example 3, which is the example that is the preferred embodiment for this patent, has a pre-made Stent, which is an off-the-shelf Palmaz Stent. In each of the ones that are selected, they are rigid by the definition of the court and by Gor's expert himself, which is that it needs to be rigid enough to hold the vessel open. Do all Stents have to be rigid? Excuse me, Your Honor? Do all Stents have to be rigid? Yes, Your Honor. In fact, at trial during direct examination, Gor asked its expert, if the elongated members weren't rigid, what would happen? And he said they would wash downstream. Or is there testimony that all Stents have to be rigid? I believe that that testimony by their expert indicates that all Stents need to be rigid. Indicates or says? Indicates or says? He says that if it wasn't rigid, it wouldn't work. So that would indicate to me that it needs to be rigid. And all of the examples are a Stent that holds the vessel open and has rigidity to it. Beyond that, at the Markman hearing, Gor's counsel actually stated to the court that a definition, and I would like to read that if I may. The Stent component is commonly understood to comprise a metal or semi-rigid cylindrical structure. Semi-rigid? Semi-rigid or cylindrical structure. And the court said it was substantially cylindrical and rigid. And that maintained the shape of the vessel. And that was in the opening brief. So, Your Honor, I'm not really sure why rigid is here on appeal. Because they led the court to believe that. Semi-rigid or cylindrical? That sounds as though it could be cylindrical but not rigid. The court's construction, Your Honor, is that they asked for elongated members. They got it. They asked for substantially rigid, and they got it. And they asked for cylindrical, and they got it. And then they provided the definition of rigidity when their expert was asked, well, what is rigid? In fact, Your Honor, it was never objected to below. The claim construction on adding the substantially cylindrical and rigid structure was never objected to below. The only dispute below by the parties was the extent of the rigidity, which is why the two experts— But you acknowledge that there was a certain flexibility or bending. Your case doesn't turn on rigid, does it? Your Honor, one of the three dispositive findings by the court was that the two springs, when they're put together under the fabric, in the tube, were not rigid. Probably want to answer that question, no. Pardon me, Your Honor? Probably want to answer that question, no. Maybe I didn't understand your question, Your Honor. I'm sorry. Well, when the issue came up, it looked from the record as if the district court hedged, recognizing that this was not an absolutely inflexible rigid that has to have a certain flexibility. That's correct, Your Honor. The court did recognize that it had to have a certain amount of flexibility. It couldn't be totally inflexible. He did make that finding. Okay. And so I believe that's consistent with his claim construction on substantially cylindrical and rigid. I thought so as well, but I thought I heard you say that it had to be absolutely rigid and was so construed. Oh, no, Your Honor. I'm sorry. It's substantially cylindrical and rigid. And the way the parties dealt with that was that it needed to have some flexibility, but it had to be rigid enough to hold the vessel open in its open position. Yes. And the court adopted that derivative construction from Gore's own expert. Well, I ask you, your defense does not turn on the definition of rigidity, does it? It does. The court found our defense doesn't turn on that. Actually, the order of the steps is the first defense that we have on the claim construction order, and we do not have that order because we don't have a stent with those claim limitations. And we also do not have a single device because the court found that because the stent was in a singular form and because it was a structure, it needed to be a single device, and the court found that there was no single device that was then covered by a fabric in this case. So the court found that there was a second dispositive finding of non-infringement because of single device. And so the answer is that we're not dependent on rigidity. There are two other case dispositive findings by the district court that hold up under non-infringement. Okay. As far as the derivative construction is concerned, this court in Edwards v. Cook in advanced fiber acknowledged that derivative constructions are appropriate where they are not inconsistent with the intrinsic record. And here they clearly are not inconsistent with the intrinsic record. With respect to the issues raised by counsel on importation and use, I'd like to address those just briefly. First, with respect to importation, this issue is moot if the court affirms on any of the three bases of non-infringement. If the court finds that there's an ordering of the steps, that there is not a stent in this process that has the claim limitations of multiplicity, exterior surface, that the court found made a finding on, then there would be no infringement. If the court finds that the single device is not in our process and there is no cover that is made to a single device, there is absolutely case dispositive and there is no infringement. You never reach the importation issue, and the same is true with rigid. But the district court did find that Gore failed in his burden of proof on this issue of importation, that there was no evidence that any of the named defendants actually imported the product that was made by the process executed in Mexico. That failure was actually not appealed. What's being appealed here is the vicarious liability issue, and they're saying that the court only looked at direct evidence and not circumstantial evidence, and they're saying the court erred in looking at the body of evidence. But the court actually – the reason we know the court looked at the body of evidence is because the court basically told us so. The court said the court is left to decide whether any of the evidence admitted at trial can support vicarious liability. The reason for this is because Gore never raised vicarious liability in pleadings, through witnesses, in post-trial findings. It was never raised. The court raised it sui sponte and looked at all of the evidence. The evidence Gore now is saying to look at, the court actually did look at, including this evidence on Medtronic's cardiac surgery, taking another non-entity, non-party, and saying it's controlling another non-party, non-entity of Medtronic, which is Medtronic, Mexico. It's asking this court to make fact findings in the first instance on appeal on this particular issue. The court actually said, as Chief Judge Rader noted, that to find one of the named defendants directed any of this importing activity would be a mere assumption. That's at JA 136 to 137. What they're asking this court to do now is to do this fact finding and engage in this same speculation that the district court refused to engage in. Regarding the use, use is also moot if the court affirms any of the non-infringement arguments that we've made today. But beyond that, use is also waived, because the first time the act of infringement of use under 271G was raised was in the opening brief. It's the first time it was ever raised. The court could have raised use at trial. They could have raised it in proposed findings and in post-trial motions. They never raised it at all. So we believe that it's waived on appeal. On the merit squirrels… It wasn't disputed, was it? It was never an issue below. The court never ruled, made any findings on use. If it wasn't disputed, how can we say that it was waived? Your Honor, the first time they're raising it as a disputed issue was in their opening brief by saying that the use of adding the StentGraft product to a catheter was a use in the United States. The reason we know that that wasn't a use is because in 2004 to 2008, the Medtronic Talon StentGraft was not FDA approved. And the court made a specific fact finding on this issue. At JA 78, the court stated, from 2004 to 2008, the Talon StentGraft was shipped outside the United States for eventual sale and use in foreign countries. Not approved for sale or use in the United States. That's at JA 58. So, Your Honor, in closing, the district court's judgment of non-infringement is based on three independent bases here, as we've said, and that importation and use are moot. Further, Gore's request for judgment of this court, if it reverses on order of steps and on the issue of rigid, is also misplaced for two reasons. One, there are three reasons for non-infringement. Because there is a single device, which they have not appealed, they have not objected to on appeal, that the court found that there was a single device. And they did not appeal the fact that the court found that the single spring and the double spring, when placed together, are never connected to one another. And therefore, they never form a single device. That is not appealed either. So the basis for the court's finding of non-infringement on the single device issue is really not appealed and should stand as a basis for non-infringement. Not in the claim. Excuse me, Your Honor? Not in the claim. Why does it have to be appealed? What the court – well, Your Honor, with respect to single device, the court made an affirmative finding that under Gore's theory of infringement, it failed for two reasons. And one of the reasons was that there was not a single device. The court found a claim construction that stent was required to be a single device as a matter of claim construction, and found that because stent was the singular form, and that it was a structure, which is also not appealed, that stent is a structure, the court found that it needed to be a single device. And as a fact finding, which is not disputed on appeal, the single spring and the double spring are never connected to one another. So there's never a multiplicity of openings. So there's never a single device. That was a matter of claim construction, Your Honor. If they wanted to appeal that, they should have appealed it. That claim construction now stands. Undisputed on appeal. I see that my time is up, Your Honor. All right. Thank you. Mr. Davis, you have a little over two and a half minutes. Thank you. Very briefly, Your Honor, at page 42 of our opening brief, section 2A is entitled, There is no basis for the district court's requirement that the stent have a rigid structure. We absolutely appealed that claim construction issue. And the reason that we did is because the district court raised that for the first time in its opinion. I heard Mr. Alopua mention something about post-trial briefing. There was no post-trial briefing here. We asked the court for the opportunity to brief things post-trial. We did not get that opportunity. And so it is true that for the first time here on appeal, the use issue came up in this brief and the rigid structure issue came up. But this is the first time that we could raise it. As to the use issue, we disagree that this was not an issue that was raised before. Throughout the proceedings and throughout the record, we argued infringement under 271G. It came up in openings. There was cross-examination of Medtronic's Vice President of Marketing, Dr. Qualey Thompson, who testified about the importance of loading the stent graft onto the catheter in the United States. Our damages expert, Dr. Steck, opined that part of his damages theory was based on this use. And, in fact, although I acknowledge it's not in, I recognize now it's not in the JA that was submitted to the court, Medtronic's damages expert, Mr. Thomas, even responded to that and broke it out in that way as well. So the use issue was absolutely before the court. It was not briefed, but that was because the court did not allow us to do any post-trial briefing. Mr. Alacqua mentioned that there were three issues on appeal that any one of which would be dispositive. But the fact is, read carefully, the district court's opinion merges them all together. For example, the district court required that the stent be completed before the covering begins, but the district court construed the stent to require a rigid structure. The determination can't be made of whether a stent is selected and formed without considering the rigid structure issue. And on that point, as the court noted, the district court made no finding about intrinsic evidence that would support the definition of a rigid structure. The advanced fiber case that this court issued that said a derivative construction is appropriate, still says that the court is required to follow the strictures of Phillips in construing its claims. The district court made that conclusion without any citation to the intrinsic record whatsoever. Thank you, Your Honors. Thank you, Mr. Davis. That concludes the morning.